# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

## CIVIL CASE NO. 1:06cv199

| | |
|---|---|
| MELANIE PITROLO, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>COUNTY OF BUNCOMBE, )<br>NORTH CAROLINA, *et. al.*, )<br>)<br>Defendants. )<br>_____ ) | **O R D E R** |

**THIS MATTER** is before the Court on the following:

1. The Plaintiff's Motion for Recusal [Doc. 111];

2. The Plaintiff's Motion to Vacate Order [Doc. 117]; and

3. The Plaintiff's Supplemental Motion to Vacate Order [Doc. 120].

## PROCEDURAL HISTORY

In May 2006, the Plaintiff initiated this action alleging that the Defendants failed to promote her to the position of Interim Director and Director of the Western North Carolina Regional Air Quality Agency (Agency) because of her gender. [Doc. 1]. At the conclusion of discovery, the Defendants moved for summary judgment. [Doc. 19]. While that motion

was pending, the parties attended mediation but reached an impasse. [Doc. 24].

The Court[1] found that the Plaintiff's principal evidence came from her affidavit in which she recounted a statement made to her by Bob Camby (Camby), the retiring Director of the Agency. [Doc. 47 at 7]. According to the Plaintiff, Camby told her that she was not selected to fill his position due to opposition against her because, among other reasons, she was a young woman. [Id.]. During his deposition, however, Camby denied making any such statement and testified that he actually told the Plaintiff the opposition against her was based on her youth and lack of experience. [Id.]. Camby did not identify the person or persons who were opposed to her promotion. [Id.]. The presiding judge noted the conflicting evidence and found that the purported statement by Camby was "hearsay on hearsay." [Id. at 14]. Finding that this constituted inadmissible hearsay, the presiding judge granted summary judgment to the Defendants because there was no other evidence in the record, either direct or circumstantial, that gender was a motivating factor in the decision not to promote the Plaintiff.[2] [Id. at 14-16].

_____

[1]Hon. Lacy H. Thornburg was the presiding judge over this case until his retirement in 2009. The case was subsequently reassigned to the undersigned.

[2]The Court also granted summary judgment as to the Plaintiff's other six claims

2

The Plaintiff appealed the dismissal of her case. [Doc. 49]. On appeal, the United States Court of Appeals for the Fourth Circuit found that Camby's statement was admissible as a party opponent admission pursuant to Federal Rule of Evidence 801(d)(2). <u>Pitrolo v. County of Buncombe, et. al.</u>, 2009 WL 1010634 (4th Cir. 2009). Because the statement constituted direct evidence of gender discrimination, the Court of Appeals vacated the grant of summary judgment as to the gender discrimination claim and remanded that claim for trial. <u>Id</u>. In addition, the Court affirmed the grant of summary judgment as to the retaliation claim.[3] <u>Id</u>.

After remand to this Court, the Defendants renewed their motion for summary judgment. [Doc. 57]. On June 29, 2009, Judge Thornburg dismissed the Plaintiff's claims for individual liability under Title VII but denied the Defendants' motion for summary judgment on the gender discrimination claim. [Doc. 62]. The case proceeded to trial on July 20, 2009. At the close of evidence, Judge Thornburg found as a matter of law that no issue concerning the position of Director, as opposed to Interim

---

alleged in the Complaint. [Doc. 47].

[3]The Plaintiff did not appeal the dismissal of the other five claims.

Director, of the Agency had been alleged and thus dismissed any such claim. The jury returned their verdict finding: (1) the Plaintiff was denied the promotion to Interim Director because of her gender; (2) gender was a motivating factor in the Defendants' decision not to promote her to that position; and (3) the Defendants would have denied the Plaintiff the promotion even in the absence of consideration of her gender. [Doc. 82]. The jury declined to award any damages to the Plaintiff, even nominal damages. [Id.].

The parties filed post-trial motions. [Doc. 86, Doc. 89]. Judge Thornburg denied the Plaintiff's motion for declaratory relief, attorney's fees and costs and granted the Defendants' renewed motion for judgment as a matter of law. [Doc. 94]. The Plaintiff's action was dismissed with prejudice. [Doc. 95]. The Plaintiff appealed again. [Doc. 96].

On appeal, the Fourth Circuit vacated the trial court's order granting the Defendants' motion for judgment as a matter of law. Pitrolo v. County of Buncombe, et. al., 407 Fed. App'x. 657 (4th Cir. 2011). The Court of Appeals reinstated the jury verdict and judgment in the Plaintiff's favor. Id. at 659-60. The Court also held that "with the reinstatement of the jury's verdict, Pitrolo is now the prevailing party ... [and] [a]s such, she is entitled

to seek declaratory relief, injunctive relief, and attorney's fees and costs demonstrated to be directly attributable to her mixed-motive claim." Id. The case was therefore remanded to this Court for reconsideration of the Plaintiff's post-trial motion for declaratory relief and attorney's fees. Id.

Upon receipt of the mandate, the undersigned provided the parties with an opportunity to supplement their past filings. [Doc. 107]. On October 1, 2012, the Court denied the Plaintiff's Motion for Declaratory Relief, Attorney's Fees and Costs. [Doc. 110]. Approximately two and a half weeks later, the Plaintiff moved for recusal of the undersigned. [Doc. 111]. While that motion was pending and before the Defendants' response was due, the Plaintiff filed a Notice of Appeal. [Doc. 113]. More than a month later, the Plaintiff moved this Court to vacate its October 1, 2012 Order, admitting that "Upon the filing of the notice of appeal, the District Court *may have lost jurisdiction to vacate the October 1, 2012 Order*, although the District Court still has jurisdiction to rule upon the Motion for recusal." [Doc. 117 at 2] (emphasis provided). The Plaintiff moved a third time in January 2013 for this Court to vacate its October 1, 2012 Order, this time claiming that defense counsel breached ethical obligations. [Doc. 120]. The Plaintiff filed this second motion to vacate despite having earlier acknowledged that

5

the Court "may have lost jurisdiction to vacate" its earlier Order.  [Doc. 117 at 2].

## DISCUSSION

**The motion to recuse.**

The Court will first address the issue of its jurisdiction to rule on the Motion for Recusal.  As noted above, the Plaintiff filed that motion prior to filing her Notice of Appeal.  The issue is thus whether this Court may address the motion despite the pending appeal.

The Plaintiff has appealed from the ruling of this Court that she is not entitled to declaratory judgment or an award of attorneys' fees.  When she filed her Notice of Appeal from that ruling, the appeal did not involve any issues concerning recusal.  As of that time no motion to recuse had been filed, much less ruled upon.  In fact, the Plaintiff had not yet even brought anything to the attention of the Court that could form the basis for a motion to recuse.  Lopez Dominguez v. Gulf Coast Marine & Associates, Inc., 607 F.3d 1066, 1073 (5th Cir. 2010).  This Court therefore retains jurisdiction as to matters not involved in that appeal, including whether or not it is appropriate for the undersigned to recuse.  Id.

Additionally, a district court does not lose jurisdiction to consider and

6

rule on matters in aid of an appeal. <u>Lytle v. Griffith</u>, 240 F.3d 404, 408 (4th Cir. 2001) (quoting <u>In re Grand Jury Proceedings under Seal</u>, 947 F.2d 1188, 1190 (4th Cir. 1991)). A final ruling on the issue of recusal will aid the appeal in that all matters will be placed before the United States Court of Appeals for the Fourth Circuit, provided that appropriate and timely procedural mechanisms are followed by the parties. <u>Id</u>.

For these reasons the Court will address the issue of recusal. The parties do not dispute the facts related to the motion to recuse. In either May or June 2005, the Plaintiff received legal advice from Matthew Roberson (Roberson), an attorney with the law firm of Adams, Hendon, Carson, Crow and Saenger, P.A. (the Firm). [Doc. 112-1 at 1]. The undersigned was a partner in that Firm until being sworn in as a United States District Court Judge for the Western District of North Carolina on September 17, 2007. The legal advice received by the Plaintiff concerned her denial of a promotion by the Agency and her legal rights as a result thereof. [<u>Id</u>]. The Agency, of course, was named as a defendant in this action. On November 3, 2005, the Plaintiff and Roberson signed a Contingent Fee Contract for Legal Services with the Firm in which it was agreed that she would be represented by the Firm in the event that "[a]fter

investigation and research, … a justifiable basis exists for a claim on the Client's behalf[.]" [Doc. 112-2]. Roberson advised the Plaintiff to pursue an administrative complaint with the North Carolina Office of State Personnel and he attended an administrative hearing with her in December 2005. [Doc. 112-1 at 2]. There is no evidence that Roberson's representation of the Plaintiff continued after December 2005, or that the undersigned had any knowledge that Roberson had ever represented the Plaintiff. In fact, the undersigned did not know that Roberson or the Firm ever had any contact whatsoever with the Plaintiff.

In May 2006, the Plaintiff had her initial client conference with Michael Wimer (Wimer) of Wimer and Associates, P.C. [Doc. 114-2 at 5]. Wimer has testified that "[p]rior to hiring [Wimer's] firm, Mrs. Pitrolo consulted with at least three area attorneys who discouraged her from prosecuting this action, and refused to take her case." [Id. at 10]. Based on Wimer's statement, it is implied that Roberson and the Firm after investigation and research ultimately refused to take the Plaintiff's case. [Id.].

As previously noted, the undersigned took office as a District Judge on September 17, 2007. The Plaintiff's case, however, remained assigned

8

to Judge Thornburg.[4] In August 2009 he entered a Memorandum and Order granting the Defendants' Motion for Judgment as a Matter of Law and denying the Plaintiff's Motion for Attorneys' Fees. [Doc. 94; Doc. 95]. On September 1, 2009, the Plaintiff filed a Notice of Appeal from that ruling. [Doc. 96]. Plaintiff was notified on September 15, 2009, that the underlying District Court action was re-assigned to the undersigned on Judge Thornburg's retirement, just as was the remainder of Judge Thornburg's docket was. [Unnumbered ECF Entry of 9/15/2009].

Almost a year and a half later, the Fourth Circuit vacated the decision of Judge Thornburg and remanded the matter to this Court. On remand in February 2011, the undersigned notified the parties by Order of the time periods within which to supplement their filings in connection with the Plaintiff's remanded motion for fees and declaratory relief. [Doc. 107]. The parties did so in March 2011 and the Plaintiff presented nothing in her supplemental filings concerning recusal of the undersigned, or even mentioning that she had previously been represented by an associate in the undersigned's former law firm. [Doc. 108; Doc. 109].

The Court issued the Order denying the Plaintiff the relief sought on

---

[4] Judge Thornburg continued to handle most of the Asheville Division civil docket until his retirement.

October 1, 2012. [Doc. 110]. On October 19, 2012, more than three years after the case was reassigned to the undersigned and after receiving an adverse ruling, the Plaintiff for the first time raised the issue of recusal.

The Plaintiff's ground for recusal is limited to 28 U.S.C. §455(b)(2) which requires a judge to disqualify himself from presiding over a case where in private practice, a lawyer with whom he practiced served during such association as an attorney concerning the matter in controversy. Congress has emphasized that the statute does not permit recusal unless the party seeking the same presents a reasonable basis for disqualification. E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc., 847 F.Supp.2d 843, 851 (E.D.Va. 2012) (citing H.R.Rep. No. 93-1453 (Oct. 9, 1974), 1974 U.S.C.C.A.N. 6351, 6355)). Indeed, "each judge must be alert to the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected [or known] adverse decision[.]" Id. Nor are litigants entitled to seek disqualification of a judge solely in order to avoid an adverse decision. Id.

In this regard, the timeliness of the Plaintiff's motion must be addressed. Timeliness is a requirement when recusal is sought under §455(b)(2). Id. at 853 (citing United States v. Owens, 902 F.2d 1154, 1155

(4th Cir. 1990)); <u>Newport News Holdings Corp. v. Virtual City Vision</u>, 650 F.3d 423, 432 (4th Cir.), <u>cert. denied</u> __ U.S. __, 132 S.Ct. 89, 181 L.Ed.2d 19 (2011) (timeliness is "an essential element of a recusal motion).

> [P]romptness in filing recusal motions is necessary to prevent parties from holding back information relevant to recusal with the purpose of determining whether the presiding judge treats them the way that they want to be treated. To avoid this circumstance and the corresponding waste of resources (of the parties and the judiciary) and the unfairness (to the other party) that such waste entails, the Fourth Circuit requires the movant to raise the disqualification of the trier … at the earliest moment *after knowledge of the facts.*"

<u>Kolon Industries, Inc.</u>, 847 F.Supp.2d at 851 (citing <u>Owens</u>, 902 F.2d at 155-56, other citations omitted) (emphasis in original). The Plaintiff knew in September 2009 that her case was reassigned to the undersigned. Yet, she made no mention of recusal for more than three years, waiting until after she had received a negative ruling from this Court. <u>Id</u>. (16 months after knowledge too long); <u>Newport News</u>, 650 F.3d at 432-33 (three months after knowledge too long). In addition, Plaintiff's attorney claims that *he* did not learn that Plaintiff had previously been represented by the Firm until after that ruling, but at no point in the Plaintiff's affidavit did she state that *she* was unaware of the Court's prior connection with the Firm until after October 2012. This is simply "both too little and too late." <u>Kolon</u>

11

Industries, Inc., 847 F.Supp.2d at 856. The Plaintiff's motion for recusal is therefore denied as untimely.[5] Newport News, 650 F.3d at 433 (lack of timeliness alone ground to deny motion to recuse); United States v. Whorley, 550 F.3d 326, 339 (4th Cir.), rehearing en banc denied 569 F.3d 211 (4th Cir. 2009), cert. denied ___U.S. ___, 130 S.Ct. 1052, 175 L.Ed.2d 892 (2010) (facts underlying motion to recuse were known to defendant from initiation of the litigation and he showed no cause excusing the failure to seek recusal in a timely manner).

Having concluded that the motion is untimely, it is technically unnecessary to address the merits of the motion. Newport News, 650 F.3d at 433; Kolon Industries, Inc., 847 F.Supp.2d at 857. In the interest of finality, however, the Court will make an alternative ruling. Id.

The Plaintiff bears the burden of showing that Roberson represented her in the same "matter in controversy" as that at hand. United States v. DeTemple, 162 F.3d 279 (4th Cir.), cert. denied, 526 U.S. 1137, 119 S.Ct. 1793, 143 L.Ed.2d 1020 (1999). In other words, Plaintiff must show the nature and extent of the connection between the Court's prior professional

---

[5] The Court does not rule that the Plaintiff waived her right to move for recusal. 28 U.S.C. §455(e). In reply to the Defendants' arguments of untimeliness, the Plaintiff claimed that she did not waive her right and therefore, her motion was timely. The two issues are distinct and no ruling as to waiver is required.

12

association with Roberson and the case at hand must be shown. Id. The Plaintiff has shown only that Roberson attended an administrative hearing with her before the Office of State Personnel in 2005. She has failed, however, to set forth in the record the parameters of the issues involved at that hearing. Kolon, 847 F.Supp.2d at 857 (failed to carry burden to show same matter in controversy); United States v. Black, 490 F.Supp.2d 630, 650 (E.D.N.C. 2007) (former law partner's work in redistricting case not same matter in controversy as indictment). Plaintiff's counsel has stated under oath that no law firm would take her case, except his, and thus, has directly indicated that Roberson and the Firm declined to take the case Plaintiff pursued in this Court. An administrative hearing before the Office of State Personnel is not the same "matter in controversy" as a lawsuit alleging violations of Title VII. Blue Cross & Blue Shield of Rhode Island v. Delta Dental of Rhode Island, 248 F.Supp.2d 39, 46 (D.R.I. 2003) (matter in controversy must related to the docket number attached to the case at hand and the pleadings contained therein). The two matters involve "to a large extent, different issues and different remedies." Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1, 839 F.2d 1296, 1302 (8th Cir.), cert. denied 488 U.S. 869, 109 S.Ct. 177, 102 L.Ed.2d 146 (1988). The

13

fact "that two [proceedings] might have some facts in common [is] not controlling on whether they qualify as the same matter in controversy." DeTemple, 162 F.3d at 286.

Moreover, in this case, the underlying suit and the merits thereof were handled by Judge Thornburg. The only issues before the undersigned were the purported entitlement to declaratory judgment and attorneys' fees based upon a prior jury verdict and the limited remand by the Court of Appeals. Budinich v. Becton Dickinson & Co., 486 U.S. 196, 199, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988) (claim for attorney's fees not part of the merits of the underlying action); Little Rock School Dist. v. Armstrong, 359 F.3d 957, 960 (8th Cir. 2004) (in determining whether it is the same matter in controversy, look to the substance of the issues argued and decided in the two proceedings). In fact, this Court's hands were tied by the facts found by the jury, the record previously established in lengthy litigation and the last remand from the Fourth Circuit.[6] Id. at 961 (the issues now before the Court do not have a sufficient relationship with earlier matter to constitute the same matter in controversy). Any connection between the Firm, the Plaintiff and the undersigned is simply too attenuated

---

[6] Indeed, the Court noted that the Plaintiff had failed to request declaratory relief in her Complaint and thus could not be awarded such relief. [Doc. 110 at 8].

14

to be considered the same matter in controversy.  <u>United States v. Walton</u>,

56 F.3d 551 (4th Cir. 1995).

Indeed, "a presiding judge need not recuse himself simply because

he possesses some tangential relationship to the proceedings."  <u>United

States v. Cherry</u>,  330 F.3d 658, 665 (4th Cir. 2003).  "A judge is as much

obliged not to recuse himself when it is not called for as he is obliged to

when it is."  <u>In re Drexel Burnham Lambert, Inc.</u>,  861 F.2d 1307, 1312,

<u>rehearing denied</u> 869 F.2d 116 (2d Cir. 1989), <u>cert. denied</u> <u>sub nom</u> <u>Milken

v. S.E.C.</u>, 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989).

> [W]hile recusal motions serve as an important
> safeguard against truly egregious conduct, they
> cannot become a form of brushback pitch for
> litigants to hurl at judges who do not rule in their
> favor.  If [the Fourth Circuit] were to encourage
> strategic moves by a disgruntled party to remove a
> judge whose rulings the party dislikes, [it] would
> make litigation even more time-consuming and
> costly than it is and do lasting damage to the
> independence and impartiality of the judiciary.  In
> other words, recusal decisions reflect not only the
> need to secure public confidence through
> proceedings that appear impartial, but also the need
> to prevent parties from too easily obtaining the
> disqualification of a judge, thereby potentially
> manipulating the system for strategic reasons,
> perhaps to obtain a [new ruling from a new judge]
> more to their liking.

<u>Belue v. Leventhal</u>,  640 F.3d 567, 574 (4th Cir. 2011).

15

Such is the case here.  For these reasons the motion for recusal will be denied.

**The motions to vacate.**

After filing the Notice of Appeal, the Plaintiff then filed two motions to vacate the Orders entered by this Court pursuant to Federal Rule of Civil Procedure 60(b).

The first issue is, again, whether the Court has jurisdiction to rule on the motions.  Federal Rule of Civil Procedure 62.1 provides the procedural guidance.

> If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may:
>
> 1. defer considering the motion;
>
> 2. deny  the motion; or
>
> 3. state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

Fed.R.Civ.P. 62.1(a).

Thus, while the Notice of Appeal "strips" this Court of jurisdiction to *grant* either motion pursuant to Rule 60(b), the Court does retain jurisdiction to *deny* those motions and will do so.  Lopez Dominguez, 607

16

F.3d at 1074; Osei v. La Salle University, _____ Fed.App'x. _____, 2012 WL 3553617 (3rd Cir. 2012) (following notice of appeal, district court correctly denied motion to recuse and pursuant to Rule 62.1, also correctly denied Rule 60(b) motion).

In the first motion, the Plaintiff claims that because the Court presided over this case while "disqualified," Rule 60(b)(6) requires vacatur of its Orders. Fed.R.Civ.P. 60(b)(6) (the court may relieve a party from a final order for any reason that justifies relief). While Rule 60(b)(6) does authorize a district court to grant relief, it may be invoked only in "extraordinary circumstances" where the party has a meritorious claim, the opposing party is not unfairly prejudiced and the motion is timely made. Aikens v. Ingram, 652 F.3d 496, 500-01 (4th Cir. 2011). The Supreme Court has defined such an "extraordinary circumstance" as including the failure of a judge to disqualify himself or herself pursuant to 28 U.S.C. §455. Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863, n.11, 864, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). The Court also noted that Rule 60(b)(6) requires that the motion be made within a reasonable time. Id. In determining whether a ruling should be vacated for a violation of §455, the court should consider the risk of injustice in the case at hand,

17

the risk of injustice in other cases and the risk of undermining the public's confidence in judicial process.  Id.

The Plaintiff's request fails because she does not have a meritorious claim that the undersigned should be recused; thus, there is no risk of injustice to her in this case.  Id.  Indeed, in the Plaintiff's first appeal, she abandoned her claims to any relief except gender discrimination and retaliation.  Dowell v. State Farm Fire & Cas. Auto. Ins. Co., 993 F.2d 46, 48 (4th Cir. 1993) (if the reason asserted for Rule 60(b) motion could have been addressed on appeal from judgment, motion denied as attempted substitute for an appeal).  Her second and third appeals dealt solely with an attempt to recover attorney's fees and a declaratory judgment based on the jury's verdict.  At no time did the Plaintiff appeal the dismissal of her claim based on the denial of the Director's position, as opposed to the Interim Director's position.  Id.  Nor did she appeal the jury's verdict denying her any damages, even nominal ones.  Id.  There is, therefore, neither a risk of injustice in other cases nor of undermining public confidence in the judicial system.  Liljeberg, 486 U.S. 847.

On the other hand, a vacatur of the October 1, 2012 decision denying declaratory relief and attorney's fees would place the parties in the same

18

position as they occupied upon remand by the Fourth Circuit.  While the Plaintiff would certainly welcome a return to that posture, it would be highly prejudicial to the Defendants who would be forced to incur additional legal fees to plow again the same legal ground, thus resulting in the risk of injustice to them.  Id.  Moreover, the Plaintiff concedes that the undersigned had no knowledge of the Firm's former representation and thus, there is no ground on which to assert bias or impropriety.  [Doc. 119 at 5].  That is, there is no risk of undermining the public's confidence in the judicial process.  Liljeberg,  486 U.S. at 862-64.

The second Rule 60(b)(6) motion is based on the purported violation by defense counsel of the confidentiality requirements of the Fourth Circuit.[7]  [Doc. 120].  Defense counsel provided an affidavit in opposition to the Plaintiff's supplemental filings seeking an award of attorney's fees. [Doc. 108-1].  In support of the Defendants' position that the Plaintiff's pursuit of the litigation was solely to obtain an award of attorney's fees, counsel disclosed that during a mediated settlement conference with a mediator for the Fourth Circuit, the Defendants offered $10,000.00 to resolve the matter.  [Id.].  Counsel also disclosed that the Plaintiff refused

---

[7] Rule 33 of the Fourth Circuit rules provides that information disclosed in the mediation process may not be disclosed to any person outside the mediation program participants. U.S.Ct. of App. 4th Cir. Rule 33.

to modify her settlement demand of $173,000.00. [Id.]. Months after the Court's October 1, 2012 ruling, the Plaintiff now cries foul, claiming that defense counsel acted unethically and that this Court "relied upon that improperly disclosed information in making its decision." [Doc. 120-1 at 3].

In considering the Plaintiff's motion for an award of attorney's fees, the undersigned ruled as follows:

> At the close of evidence, the trial court dismissed the Plaintiff's claim based on her denial of the position of Director and limited her claim to the Interim Director's position. This ruling of necessity limited her claim for lost wages to $7,000.00. At that time, the Defendants renewed their offer to settle the case for $15,000.00, despite the fact that the maximum amount of lost wages in issue was the sum of $7,000.00. The Plaintiff's attorney made no response to this offer. As previously noted, the jury did not award the Plaintiff any sum.

[Doc. 110 at 16]. That offer, however, was made during the trial, before the case was submitted to the jury, and not at the mediation. [Id.].

The undersigned further found that the Plaintiff's attorney implicitly admitted that the sole purpose of her second appeal was to pursue an award of attorney's fees. [Id. at 17]. Thus, "the legal services rendered in connection with that appeal are not 'directly attributable only to the pursuit of a [mixed-motive] claim.'" [Id.]. The undersigned also noted, in

20

considering whether an award of attorney's fees was warranted, that the Plaintiff had rejected the Defendant's settlement offer made at the Circuit while the case was on appeal. [Id. at 18]. These issues were considered in conjunction with a determination as to whether this litigation served a public purpose, as opposed to simply pursuing the Plaintiff's individual rights. [Id.].

Whether or not the Defendants' attorney violated the Circuit's rule against nondisclosure has no bearing on the validity of this Court's determination of the Plaintiff's right to an award of attorney's fees. That is not an issue which is within the jurisdiction of this Court. It is noteworthy, however, that Plaintiff's counsel was clearly aware of the contents of the Defendants' response for almost one year prior to raising the issue in connection with the second motion to vacate. The Court's brief reference to that disclosure in no manner creates a risk of injustice to either party. Nor does it undermine public confidence in the integrity of the judiciary.

The timing of these Rule 60(b)(6) motions is concerning in that it smacks of an attempt to manipulate. The Plaintiff filed the motion to recuse eighteen days after entry of the final Order. Clearly, she was at that time in possession of the information upon which she has relied in the Rule

60(b)(6) motions.   In re Clayton, 386 F.Supp.2d 631 (M.D.N.C. 2005).

Indeed, her request for relief in the motion to recuse is for vacatur of the

Orders entered by the undersigned, yet no separate Rule 60 motion was

simultaneously filed.   [Doc. 111 at 3].   Had the Plaintiff filed a Rule 60

motion on or before twenty-eight days from the October 1, 2012 ruling, her

time within which to appeal would have been extended pending a ruling on

such a motion.   Fed.R.App.P. 4(a)(4)(A)(vi).   Instead, she filed a Notice of

Appeal on October 31, 2012 and waited until November 21, 2012 and

January 21, 2013 to file the pending Rule 60 motions.   By so doing, the

Plaintiff has defeated the very purpose of her motions – to obtain vacatur of

this Court's rulings – because the Court no longer has the jurisdiction to do

so.

Procedurally, there is also no reason to do anything other than deny

these Rule 60(b) motions.   Provided that the parties take the appropriate

steps in connection with this Court's ruling on the motion to recuse, they

will obtain review thereof in conjunction with the pending appeal.   Shell Oil

Co. v. U.S., 672 F.3d 1283, 1288 (C.A.Fed. 2012) ("As a general rule, a

judge's refusal to recuse under §455 can be reviewed on an appeal from a

final judgment.").   Thus, any injustice to the parties in conjunction with the

denial of the motion to recuse may be cured by the "fresh review" of the Fourth Circuit. <u>Curves, LLC v. Spalding County, Ga.</u>, 685 F.3d 1284, 1288 (11th Cir. 2012). Likewise, such review will insure that the public's confidence in the judicial process will not be undermined. <u>Id</u>.

Plaintiff's motion puts the undersigned in a very awkward position. On the one hand the undersigned desires to avoid even the appearance of any impropriety. On the other hand the Court must avoid any appearance that it is susceptible to manipulation. There is absolutely nothing in the docket or the record of this case that would have alerted the undersigned in any way that his former firm had any connection with this Plaintiff that is even tangentially related to this case. There is nothing before this Court to indicate that when the undersigned was in private practice that he was aware that a young associate in his firm attended a personnel board hearing with the Plaintiff. The Plaintiff concedes this. [Doc. 119 at 5]. In short, the Plaintiff's assertion of a conflict was a complete surprise to the undersigned. Therefore, it should be clear that any alleged conflict could not have influenced the decision of the undersigned regarding the underlying order. That being said, the only issue is whether this Court's earlier order should be vacated – notwithstanding the fact that it was not

influenced by anything related to Mr. Roberson's prior representation of Plaintiff. For the reasons stated above, the answer is clearly "no". For the Court to do so would be to present the appearance that the Court can be manipulated by a litigant who withheld such information until she received an adverse ruling in order to try to use it as a weapon against her opponent.

For these reasons the motion to vacate must be denied.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Recusal [Doc. 111] is hereby **DENIED.**

**IT IS FURTHER** ORDERED that the Plaintiff's Motion to Vacate Order [Doc. 117] and Supplemental Motion to Vacate Order [Doc. 120] are hereby **DENIED**.

Signed: February 13, 2013

Martin Reidinger
United States District Judge

24